**UNITED STATES**

v.

**Airman Garland L. BRAY, FR 255–17–4681 United States Air Force.**

**ACM S25217.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 25 Feb. 1981.

Decided 21 Aug. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens, Captain Douglas H. Kohrt and Captain Patrick A. Tucker, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## DECISION

POWELL, Senior Judge:

Contrary to his pleas, the accused was convicted by general court-martial, military judge alone, of possession of methaqualone, a violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. His sentence is a bad conduct discharge, confinement at hard labor for four months, forfeiture of $200.00 per month for four months and reduction to airman basic.

We decide that the accused was lawfully apprehended and that the methaqualone found on his person during a strip-search was admissible against him. We also conclude that the military judge's inquiry prior to accepting a "confessional stipulation" was inadequate and direct proceedings in revision to correct the deficiency.

### I

The accused was a passenger in the back seat of an automobile which was stopped for a random vehicle inspection upon entering Dyess Air Force Base, Texas. The driver, another passenger and the accused departed the vehicle and stood in a group about 10 feet from it. There, they discussed with one of the security policemen the fact that the accused was to be married and that they were in the process of having a bachelor party. When a gate guard discovered what he thought were marijuana seeds on the front passenger seat of the car, he phoned the law enforcement desk. The accused and the passenger were then escorted by a security policeman to the visitors' control building. As the accused rounded a fence which was between the group and the building, he tripped over something on the ground and fell. At that point, a security police supervisor, Lieutenant S, arrived on the scene and saw the accused on the ground. Shortly thereafter, Lieutenant S told the security policemen in the building to detain the accused and the passenger, have them empty their pockets and conduct a pat-down search. When Lieutenant S saw that nothing was found, he left the room.

Outside meanwhile, the driver of the automobile took a box containing marijuana from his shirt pocket and gave it to a security police investigator. A more thorough search of the car revealed a "roach clip" and marijuana residue in the glove box and an "herb shaker" under the front passenger seat of the car. Lieutenant S returned to the visitors' control building and ordered the passenger and the accused apprehended for suspected use and/or possession of drugs. His decision to apprehend the accused was based upon the marijuana and paraphernalia found in the car and the accused's physical behavior, specifically, his slurred speech and lack of coordination. The accused was strip-searched and methaqualone pills were found in a plastic bag which was lodged beneath his scrotum.

The trial defense counsel contended that: (a) the apprehension was illegal because not based on probable cause; and (b) even if found to be legal, the search conducted incident thereto exceeded the permissible scope of a search for weapons or destructible evidence. The military judge denied the motion to suppress the methaqualone pills.

In asserting that the military judge's ruling was erroneous, appellate defense counsel adopt the argument of the trial defense counsel and also urge that an apprehension

occurred at the precise time the accused was ordered to be taken to the visitors' control building. They claim that because there was no probable cause to apprehend the accused at that time, the apprehension was unlawful and the subsequent observation of the accused's physical condition was the fruit of that illegality and could not provide probable cause for the later apprehension and the search incident thereto. We resolve these contentions adversely to the accused.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that policemen engaged in the investigation of criminal activity may detain a person without having probable cause to arrest that person so long as the police action is otherwise reasonable under the Fourth Amendment. The Court held that a "seizure" of a person occurs when a policeman, by means of physical force or show of authority, restrains the freedom of that person to leave or walk away. To justify any curtailment of the person's liberty, the policeman must have a reasonable and articulable suspicion, based on objective facts, that the person seized is engaged in criminal activity. *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Terry v. Ohio, supra.*

Under the facts of this case, we find that a *Terry* stop and "seizure" of the accused occurred on two occasions before his apprehension. The first was when he was initially taken to the visitors' control building and the second was when he was detained in the building and subjected to a pat-down search. Moreover, we conclude that on each event, the "seizure" of the accused's person was legally permissible since specific and articulable facts known to the security policemen made their actions reasonable.

The accused and his friends were legitimately stopped when they sought entry onto the military reservation in an automobile. *United States v. Harris*, 5 M.J. 44

(C.M.A.1978); *United States v. Bowles*, 7 M.J. 735 (A.F.C.M.R.1979). To facilitate an inspection of the vehicle, it was reasonable to request the group to get out of the car. The discovery of suspected marijuana seeds on the passenger seat and the knowledge that the individuals were partying as a group, supported a reasonable suspicion that some criminal activity was afoot and justified taking the individuals to the visitors' control building while an investigation ensued. These same facts, with the added observation of the accused's fall to the ground and his physical appearance, further justified his later detention and subjection to a pat-down search. These limited stops were investigative in nature and were essential parts of a reasonable effort to control the introduction of contraband onto the Air Force base. *United States v. Blade*, 49 C.M.R. 646 (A.F.C.M.R.1974), *pet. denied* 23 U.S.C.M.A. 663, 50 C.M.R. 903 (1975).

Having concluded that no unlawful actions occurred which would require excluding evidence from consideration,[1] we reach the issue of the legality of the apprehension to which we must apply the probable cause standard. *United States v. Ness*, 13 U.S.C.M.A. 18, 32 C.M.R. 18 (1962); Article 7, Code, 10 U.S.C. § 807, *supra.*

The security policemen knew that the accused was part of a group of friends who were partying together. The accused was an occupant of an automobile transporting the group in which marijuana and paraphernalia associated with its use were found. His speech was slurred and he displayed poor physical coordination. These factors, considered together, provided a reasonable belief that an offense was being or had been committed and that the accused was a perpetrator.

The defense relies heavily on this Court's decision in *United States v. Pope*, 3 M.J. 1037 (A.F.C.M.R.1977), which holds that mere presence where contraband is found is not enough to establish probable cause to apprehend. *Pope* is distinguishable from this case. In *Pope* there was a random

1. Mil.R.Evid. 314(a) & (f)(1) & (2).

association of individuals who, after arriving at a train station, formed a group for the purpose of traveling by automobile to the site of a concert. Here, in contrast, we have an integrated group of friends engaged in the celebration of a significant event in the life of one of its members. This common purpose and the location of marijuana and paraphernalia within reach of the three occupants of the car, raises the probability of criminal involvement to a level well-above that suggested by their mere presence. We hold that the accused was lawfully apprehended and that the evidence was legally seized.[2] Therefore, the military judge correctly denied the defense's motion to suppress.

## II

Lastly, appellate defense counsel assert that the military judge erred in accepting a "confessional stipulation" without conducting a thorough inquiry into the matter as required by *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977). They claim the inquiry was inadequate in that it failed to encompass all the requirements of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and did not reflect a plea bargain inquiry pursuant to *United States v. Green*, 24 U.S.C.M.A. 299, 1 M.J. 453 (1976). The Government in its reply admits that the inquiry was deficient because the military judge failed to specifically advise the accused that, in view of his plea of not guilty, the stipulation would not be received in evidence wihout his consent and because the military judge further failed to conduct a plea bargain inquiry. The Government contends, however, that there was no prejudice to the accused. We find that the inquiry was materially deficient and that remedial action is required.

■ The Court's holding in *Bertelson* permits the admission of a "confessional stipulation" in the presence of a not guilty plea, notwithstanding the provisions of

paragraph 154(*b*)(1), now 54*f*(1), Manual for Courts-Martial 1969 (Rev.), provided the accused has knowingly, intelligently and voluntarily consented to its admission. To determine this, the military judge is required to conduct an extensive inquiry into the matter. The requirements of the inquiry were set out in *Bertelson* and further summarized in *United States v. Aiello*, 7 M.J. 99 (C.M.A.1979). We too, have discussed issues concerning the admission of these stipulations and the inquiry conducted by the military judge. *See United States v. Corrigan*, 11 M.J. 734, (A.F.C.M.R.1981) and *United States v. Krampf*, 9 M.J. 593 (A.F.C. M.R.1980). *Bertelson* and *Aiello* require that the accused be advised that, under the Manual provision because of his not guilty plea, the stipulation may not be accepted without his consent and that, by stipulating, he alleviates the Government's burden of proving every element of the offense beyond a reasonable doubt. Further, an inquiry similar to that set forth in *Care* must be conducted. *Care*, in addition to requiring an explanation of the elements of an offense charged, the Government's burden of proof and an inquiry into the factual basis for pleading guilty, compels advice to the accused concerning waiver of his right against self-incrimination, his right to a trial of the facts by court-martial, and his right of confrontation. *Bertelson* specifically requires the military judge to conduct a plea bargain inquiry which satisfies the requirements of *United States v. Green, supra*, and to reject the stipulation should an agreement not to raise defenses or motions be revealed.[3] Failure to conduct these inquiries constitutes error. *United States v. Aiello, supra.*

■ Our review of the record discloses that the military judge did not specifically apprise the accused that, under the Manual provision, the stipulation was inadmissible as evidence without the accused's consent and that by stipulating he was relieving the Government of its burden of proving the

---

2. Mil.R.Evid. 314(g)(1) & (2).

3. If an agreement is revealed, the inquiry should be expanded to satisfy the requirements

of *United States v. King*, 3 M.J. 458 (C.M.A. 1977).

elements of the offense beyond a reasonable doubt. There was no specific question directed to the accused or counsel which would reveal either the presence or absence of a plea bargain agreement.[4] Also, we find that the military judge did not ascertain the accused's understanding of the Constitutional rights which he would waive if he were to plead guilty even though *Bertelson* clearly treated the inquiries as nearly the same. These errors require correction.

### III

In past decisions of this Court, upon rejecting "confessional stipulations" because of an inadequate inquiry, we have, in the interest of justice, set aside findings of guilty and ordered the affected charge(s) dismissed. In the case of *United States v. Steck*, 10 M.J. 412 (C.M.A.1981), the Court of Military Appeals specifically approved the use of proceedings in revision under Article 62(b), Code, 10 U.S.C. § 862(b), *supra*, and paragraph 80, MCM 1969 (Rev.), to correct *Green—King* deficiencies in a guilty plea bargain inquiry. *See also, United States v. Smith*, 5 M.J. 842 (A.C.M.R.1978). We believe this same procedure is well-suited to remedying similar deficiencies in the inquiry required under *Bertelson*. The advent of "confessional stipulations" and the concomitant inquiry was seen as a method whereby judicial economy would be realized in a case in which the defense, while not fully contesting guilt, nonetheless wished to preserve for appellate review an adverse ruling on a contested issue which it would forego with a plea of guilty. The inquiry was imposed to prevent the Government from avoiding the consequences of Article 45(a) of the Code, 10 U.S.C. § 845(a), in guilty plea cases while getting benefits through an arrangement which was practically the same. *Bertelson*, at 317. Proceedings in revision should accord the par-

ties their respective purpose and intent in this case.

Accordingly, we return the case to The Judge Advocate General for remand to the convening authority for action in accordance with this decision. Proceedings in revision under Article 62(b), UCMJ and paragraphs 80 and 86(*b*), MCM 1969 (Rev.) are directed.[5] The military judge shall revise the proceedings by conducting a full and complete inquiry of the accused as to his understanding of the effect of his consent to the stipulation in accordance with *United States v. Bertelson, supra*, and this decision. This inquiry shall specifically include: (1) an explanation of the accused's right against self-incrimination, right to a trial of the facts by a court-martial, and right to confrontation, all of which would be relinquished in the event the stipulation were accepted and findings of guilty based thereon were entered in the case; (2) an inquiry into the existence of a plea bargain agreement with the convening authority or any other authority, and in the event of an agreement, an explanation of its nature and terms to include a common understanding among the parties at trial as to its total meaning and effect; (3) advice to the accused that under the Manual provision, the stipulation would not be accepted as evidence without his consent; and (4) an assurance from the accused that he understands that by agreeing to the stipulation he is relieving the Government of its burden of proving all of the elements of the offense beyond a reasonable doubt.

The military judge is empowered to make all rulings necessary to accomplish the revision of the trial proceedings to correct the deficiencies indicated herein. If the stipulation is rejected by the military judge or the accused withdraws therefrom, the military judge will set aside the findings of guilty and the sentence and return the orig-

---

4. We do not supplement the inquiry at trial by accepting the Government's pleading averment that no plea bargain agreement existed.

5. The original convening order will be amended, by appropriate special order, to reflect any necessary changes in personnel. Paragraph 80

*b*, Manual for Courts-Martial, 1969 (Rev.). If the court-martial has been dissolved, or the convening authority otherwise deems it appropriate, a rehearing may be ordered or the charges dismissed.

inal record of trial and the authenticated record of the revision proceedings to the convening authority, who will order a rehearing or dismiss the charges.

If the military judge determines that proceedings in revision have resolved the deficiencies noted above, the authenticated record of those proceedings, together with the original record of trial, will be forwarded directly to this Court for further review.

KASTL and MAHONEY, Judges, concur.