UNITED STATES

v.

**Airman Basic Clement A. KEPPLE, FR 072–56–8417, United States Air Force.**

**ACM 26863.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 April 1988.

Decided 13 Dec. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Mark R. Bell.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

When does a stipulation become "confessional," thus triggering the need to caution an accused prior to its use in a contested case?

Today we seek to describe—with some precision—the legal tripwires which activate such a forewarning under the rule taken from *United States v. Bertelson,* 3 M.J. 314 (C.M.A.1977).

### Factual Setting

Airman Basic (AB) Kepple was tried by a military judge sitting alone as a general court-martial for desertion, the period of his absence being from May 1983 to March 1988. He pleaded not guilty to desertion under Article 85, UCMJ, 10 U.S.C. § 885. He then entered a conditional plea to absence without leave, a violation of Article 86, 10 U.S.C. § 886. The condition was retention of his right to appeal the trial judge's ruling on a defense motion for dismissal. Contents of that motion are not relevant to the issue presently under discussion.

Subsequently, the military judge accepted the plea of guilty to absence without leave; the government, however, still sought to prove desertion. The parties then offered a stipulation of fact which recited how AB Kepple entered the Air Force in 1983, completed basic training at Lackland AFB, Texas, and then received orders to F.E. Warren AFB, Wyoming. The stipulation also indicated that he departed Texas to visit New York City and see his wife. He remained in New York City, living at various addresses. He never reported for duty at the Wyoming base. In March 1988, AB Kepple was apprehended by the Air Force Security Police in New York City. He had continuously held various civilian jobs since departing Lackland AFB. When apprehended, he still possessed fatigue shirts and pants and two Class A shirts and slacks. He had no U.S. Armed Forces Identification Card.

The military judge questioned the accused as to both his plea of guilty to the lesser offense of absence without leave and the contents of the stipulation. However, the judge did not provide any other advice to the accused as to whether the stipulation could be used to prove desertion; neither did the judge caution the accused that the stipulation could amount to a confessional plea.

After stipulating to the above matters, both the prosecution and defense rested. Importantly, neither side offered anything further but each made a strong closing argument. These arguments drew inferences from the stipulation, the Government contending that Airman Basic Kepple's intent to remain away permanently was easily discernible from the stipulated facts. Contrariwise, the defense stressed that the accused neither hid nor threw away his military uniforms; he was simply immature and a procrastinator about returning.

The military judge found the accused guilty of desertion. After hearing presentencing matters, he sentenced the accused to a bad conduct discharge, confinement for three months, and total forfeitures.

On appeal, the accused argues that the document in question was a confessional stipulation, and thus the military judge erred by failing to conduct the inquiry required by *Bertelson.* Reversal is mandatory in this situation, the accused argues, because no defense evidence addressed the issue of whether he intended to remain away *permanently.*

We disagree. Affirming, we will use this factual setting as a crucible in which to analyze the limits of the *Bertelson* rule.

### Confessional Stipulations

Historically, the postulate that a stipulation tantamount to a confession should be

rejected in most instances is not new. It has found a home in military jurisprudence for at least 60 years. *See* Manual for Courts–Martial 1928, para. 126*b*. *See generally United States v. Haywood*, 31 Bd. Rev. 249, 254 (1944) and *United States v. Sparks*, 1 (A.F.) C.M.R. 262 (A.F.B.R.1949). The concept remained intact in the 1951 and 1969 Manuals.

As early as 1951, the Air Force Board of Review examined the confessional stipulation ban in a factual setting where the stipulation embraced *less* than all the elements. Such a stipulation was approved since it was not "tantamount to a confession." *See United States v. Colbert*, 1 C.M.R. 811 (A.F.B.R.1951).

In the pre-*Bertelson* era, three desertion cases are instructive. They provide examples of how much is enough (factually and juridically) to convert a legally-acceptable stipulation into a legally-dubious confessional stipulation. While the service decisions are in conflict as to whether such a stipulation is legally sanctioned, the Court of Military Appeals approved such a case in 1970.

*United States v. Sparks* involved two stipulations of fact. They in effect conceded a two year and seven month absence. The accused, a World War II paratrooper who had served in combat for over seven months and been wounded at the Battle of the Bulge, pleaded not guilty to desertion. Finding the accused's substantial rights violated, the Air Force Board of Review noted that the stipulations were equivalent to a confession of the offense charged:

> for the reason that the Court, in the absence of a complete and reasonable explanation of such a prolonged absence, would practically be compelled to infer that the accused at least at some time during the period of absence intended not to return.

*Id.* at 263.

*United States v. Johnson*, 5 C.M.R. 362 (C.G.B.R.1952), included a stipulation by the accused conceding his absence—its commencement, duration and termination. Yet the defense "did not stipulate to any attempt to desert." *Id.* at 364. While not central to its holding in the case, the Coast Guard Board of Review commented that this stipulation had the effect of what the Board called a "confessory pleading"—but only to the lesser offense of absence without leave. While the analysis is quick, we read *Johnson* as saying that a stipulation not yielding on each and every element is acceptable.

In *United States v. Wilson*, 20 U.S.C.M. A. 71, 42 C.M.R. 263 (1970), the accused pled guilty to the lesser included offense of unauthorized absence; the stipulation was the sole evidence offered by the prosecution. The Court of Military Appeals found the stipulation silent on the essential question of the accused's intent and upheld a conviction for desertion. In a detailed analysis, the Court majority noted that the accused's intent had not been conceded by the defense. *Id.* at 264. In dissent, Judge Ferguson reasoned that from the facts outlined in the stipulation—and their reasonable inferences—the military judge could conclude beyond reasonable doubt that the accused intended to remain away permanently. Thus, believed the dissenting judge, there was nothing left to be proved; as a result, he would declare the stipulation invalid since it practically amounted to a judicial confession. *Id.* at 267.

### The *Bertelson* Rule

In *United States v. Bertelson*, the Court of Military Appeals in 1977 issued a benchmark holding as to confessional stipulations. The Court ruled that a stipulation might prove confessional yet still be admissible—provided the military judge expressly communicated to the accused that it could not be accepted without that accused's consent. A stipulation practically amounting to a confession could be admitted, however, if the accused made an informed waiver. *Id.* at 315. The Court specifically cited *United States v. Rempe*, 49 C.M.R. 367 (A.F.C.M.R.1974), as formally approving the practice of making confessional stipulations acceptable ... provided the necessary cautions were voiced.

*Rempe* was the Air Force Court's prophetic treatment of whether an accused could *knowingly* enter into a confessional

stipulation. There, in a drug case, this Court recognized the general rule against accepting confessional stipulations but found an exception since the military judge had conducted a thorough and searching inquiry. It was just such an inquiry which the Court of Military Appeals would sanction in *United States v. Bertelson.*

For purposes of the present analysis, the question of crucial importance is this: *In a contested case, when does an otherwise acceptable stipulation become corrupted because it admits too much, thus triggering the need to caution an accused?* The language of *Bertelson* speaks to this matter at least seven times. A stipulation can be seen as confessional:

—if the accused has stipulated to the truth of *every* inculpatory fact charged against him, *Id.* at 315 (emphasis in original);

—if the document "practically amounts to a confession", *Id.* at 315 n. 2;

—if the document for all facts and purposes constitutes a *de facto* plea of guilty, i.e., it is the equivalent of entering a guilty plea to the charge, *Ibid.;*

—if it makes out a *prima facie* case for the Government, assuring the accused's conviction without the production of prosecutorial evidence, *Id.* at 315;

—if it admits every essential fact and amounts to a confession of guilt, *Ibid.;*

—if it concedes "every criminal element charged", *Id.* at 316; or

—if it supplies "both evidence and verdict, ending controversy", *Id.* at 317.

### Post–*Bertelson* Developments

In the decade following *Bertelson,* the various service Courts implemented its guidance. In 1981, this Court found itself faced with a sophisticated extension of the confessional stipulation problem. *United States v. Hagy,* 12 M.J. 739 (A.F.C.M.R. 1981), *pet. denied,* 13 M.J. 204 (C.M.A. 1981), was a larceny case in which the accused pled guilty to the lesser included offense of wrongful appropriation. The stipulation in question conceded all elements of wrongful appropriation. However—and this was crucial—the accused

subsequently testified that at the time he placed the items in question in a pawn shop he intended to redeem the items and return them to the true owner. *Id.* at 745. We rejected the argument that this was a confessional stipulation, prohibited by *Bertelson.* We reasoned that this was actually "an anticipation on the part of all parties that additional evidence contradicting guilt will be admitted into trial prior to findings." *Id.* at 745. We concluded that even when a factual stipulation expressly admits every element of an offense, a *Bertelson* inquiry is not inevitably demanded; a stipulation will only become a confessional one when the accused—failing to set forth any affirmative defense—finally rests his case. *Id.* at 746.

### The 1984 Manual

In 1984, the new Manual for Courts–Martial addressed the topic of stipulations at R.C.M. 811. The Discussion, echoing the general language of *Bertelson,* notes as follows:

If the stipulation practically amounts to a confession to an offense to which a not guilty plea is outstanding, it may not be accepted unless the military judge ascertains [the requirements set forth in *Bertelson* ]....

A stipulation practically amounts to a confession when it is the equivalent of a guilty plea, that is, when it establishes, directly or by reasonable inference, every element of a charged offense and when the defense does not present evidence to contest any potential remaining issue on the merits. Thus, a stipulation which tends to establish, by reasonable inference, every element of a charged offense does not practically amount to a confession if the defense contests an issue going to guilt which is not foreclosed by the stipulation [an example follows about conceding the facts of a contraband drug discovery but arguing that the accused was unaware of the drugs' presence]. Whenever a stipulation establishes the elements of a charged offense, the military judge should conduct an inquiry as described above.

For Analysis of Rule 811 *see Manual for Courts–Martial*, Appendix 21, page 21–44. It cites the Air Force *Rempe* decision along with *Bertelson*, then lists four other cases decided by the Court of Military Appeals between 1977 and 1982. In hopes of ferreting out clearer guidance, we now turn to examination of those four cases.

*United States v. Aiello*, 7 M.J. 99 (C.M.A.1979), is perhaps the easiest of the four to understand. In *Aiello*, a drug case, the defense stipulated to the data contained in a laboratory report, the fact that drugs were found, and the amount. The military judge accepted the stipulation as proof of all offenses; no other evidence was adduced by either party and no *Bertelson* caution was given. The Court held that since the military judge failed to personally apprise the accused as to the potentially shattering effect of the stipulation, reversal was required.

At the other extreme is *United States v. Long*, 3 M.J. 400 (C.M.A.1977), another drug case. A stipulation was admitted into evidence that the substance seized from the accused's car was marijuana; however, the stipulation neither admitted possession nor wrongfulness *vis-a-vis* the accused. The Court found no *Bertelson* examination required. ·

The other two cases cited in the Analysis are not quite so easy to analyze. *United States v. Schaffer*, 12 M.J. 425 (C.M.A. 1982), involved unauthorized absence and wrongful appropriation of an automobile. The case centered on whether it was permissible for the Government to condition a pretrial agreement on the accused waiving his right to an Article 32 investigation. Answering that question in the affirmative, the Court also commented—with apparent approval—on a fact pattern which parallels the instant situation. The accused pleaded to wrongful appropriation. He also entered into a confessional stipulation of fact *which established a prima facie case of larceny;* nonetheless, the stipulation allowed Schaffer's counsel to argue (successfully in this case) that he should only be found guilty of wrongful appropriation, the

lesser crime. *See United States v. Schaffer*, 12 M.J. at 428 n. 4.

*United States v. Reagan*, 7 M.J. 490 (C.M.A.1979), was a drug case resolved by the same three Court of Military Appeals judges who had decided *Bertelson*. The issue here turned on a stipulation which conceded discovery of drugs in the car and apartment of the accused. Writing for the majority, Chief Judge Fletcher stated that the stipulation was "confessional in nature" and should have been excluded under the *Bertelson* test. *Reagan*, 7 M.J. at 491. *United States v. Long*, was distinguished on the fact that Specialist Four Long did not concede the essential predicate of *possession* upon which both wrongfulness and service-discrediting conduct could be shown. In *Reagan* there was no such vigorously litigated issue of possession. Judge Perry concurred in the result. Judge Cook, however, dissented. To him, the accused had merely stipulated that the contraband was found in property either owned or rented by him; he had not conceded guilt. Therefore, said Judge Cook, the stipulation was properly admitted without the *Bertelson* inquiry. *Reagan*, 7 M.J. at 493.

### A Search for Clarity

After this review of precedents, we return to the difficult riddle of precisely what *Bertelson* requires. Earlier in this opinion, seven useful statements from the *Bertelson* opinion were set out wherein the Court of Military Appeals shed light on when stipulations become "confessional." While these statements are useful in clarifying a difficult area, they are not unambiguous.

Resolution of a close case can turn on which of the seven *Bertelson* maxims, alone or in combination, is seen as outcome-determinative. For example, *Bertelson* speaks of a confessional stipulation in terms of admitting "every essential *fact*"; at another point, *Bertelson* addresses conceding "every criminal *element* charged." *Bertelson*, 3 M.J. at 316 (emphasis added). It can also be argued with a great deal of persuasiveness that these statements actually add up to only three tests: (1) elements; (2) essential facts; and (3) "prac-

tically a plea of guilty." In any event, applying such yardsticks to the present case, AB Kepple's stipulation admitted every essential fact—but did not concede every element charged, since the element of permanent absence remained in issue.

The search for comprehensibility leads us to consider Federal cases as to when a stipulation should be seen as "confessional." The Federal Rules of Criminal Procedure under Rule 11 provide for a civilian equivalent to the *Care* inquiry when an accused either pleads guilty or makes a plea equivalent to that of guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Moreover, *Bertelson* itself cited Federal authority, *United States v. Terrack*, 515 F.2d 558 (9th Cir.1975), as probative. Accordingly, an exploration of similar Federal precedents might be enlightening.

Perhaps the case closest on point is *United States v. Wray*, 608 F.2d 722 (8th Cir. 1979). In *Wray*, the defendant failed to report to a designated area in Missouri after he had been released from Federal prison to receive medical care. The question for the trial court was whether the facts added up to the Federal crime of willful failure to remain within the limits of his confinement under 18 U.S.C. § 751. The parties stipulated to all the facts, and the defendant pleaded not guilty. The court held that this situation involved an application of law to stipulated facts; this was no confessional stipulation but simply a practical and expeditious method of raising the ultimate question of criminality when the facts were uncontested.

*De La Maza v. United States*, 215 F.2d 138 (9th Cir.1954), involved bookmakers who failed to pay Internal Revenue taxes. They conceded to such failure by stipulation. They also accepted that if the Federal law by which they were required to pay taxes was valid, they were indeed guilty; however, they vigorously resisted the law on constitutional grounds. No evidence was received from the witness stand. *Id.* at 139. Affirming their conviction, the court wryly commented that it would hardly be justice to let the defendants disown

their freely-conceded stipulation and now say "[We] led you into error; the joke is on you." *Ibid.*

Federal Rule of Criminal Procedure 11 somewhat parallels the military inquiry into guilty pleas under *United States v. Care;* however, it appears that: (1) the Federal rule is not as rigid or sophisticated as its military counterpart; and (2) there is no civilian *Bertelson* equivalent to make a caution mandatory. Thus, several Federal courts have ruled that a stipulation amounting to a *de facto* guilty plea need not require extensive examination of the defendant or impel a warning to be issued. *See United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir.1980); *see also United States v. Robertson*, 698 F.2d 703 (5th Cir. 1983), and *Joseph v. United States*, 145 F.2d 74 (9th Cir.1944) (but note the dissent of Judge Denman, commenting that if a confessional stipulation is the only evidence, there may be a requirement for further proof to satisfy the *corpus delicti* rule).

Another Federal case illustrates when a stipulation goes too far in acquiescing to damaging facts. In *Julian v. United States*, 236 F.2d 155 (6th Cir.1956), a conscientious objector violated the order of his local Selective Service Board to appear. At trial, his counsel stipulated to all the facts necessary for conviction and offered neither a defense nor testimony by the accused. The court found this wholesale stipulation of everything necessary for conviction, coupled with a plea of "not guilty," violative of the defendant's rights.

Recapitulation

Thus far, this much can be said:

1. Overall, the problem of when a stipulation becomes "confessional" has existed in military law for many decades. *Bertelson* did not fashion a new rule. Rather, it created an exception under which such stipulations were permitted. In short, an inquiry would be required in a "confessional" stipulation; once the need was satisfied, however, the case could proceed.

2. Pre–*Bertelson* cases on desertion versus absence without leave reflect differing views on whether a factual stipulation

embracing less than all the elements is tantamount to a confession. *See Johnson, Wilson,* and *Sparks,* (all desertion/absence cases). *Sparks* may be seen as law from another era; arguably, it enjoys doubtful vitality since it assumes that the trier of fact would inevitably find the accused guilty of desertion.

3. *Bertelson* set forth seven serviceable rules of thumb to help determine when a stipulation was confessional; similar language was utilized in the 1984 Manual for Courts–Martial.

4. The four military cases cited in the Analysis of Rule 811 do not provide a crystal-clear test for discerning when a *Bertelson* inquiry is required.

5. Federal civilian cases, especially those with a stipulation to all the contested facts, do not materially aid the inquiry since there is no *Bertelson*-type requirement.

### Implementing *Bertelson*

 Having explored the area, we believe that the correct reading of the *Bertelson* rule is this: *Unless the stipulation itself admits every element and no further evidence is required from the Government for a finding of guilty, the stipulation is not "confessional" and a Bertelson inquiry is not mandatory.* Accordingly, we hold in the case *sub judice* that the stipulation did not amount to an uncontested guilty plea; thus, it was allowable without a *Bertelson* inquiry.

Appellate defense counsel cogently urge that our decision in *United States v. Hagy* set the outer limits for confessional stipulations. In *Hagy,* we held that the need for a *Bertelson*-type inquiry was obviated because the accused went forward with evidence. Defense counsel argue that *Hagy* involved a sort of "confession and avoidance" situation, with the defense advancing their case by offering evidence; in contrast, no other evidence has been presented here, and thus the accused was allegedly wronged by failure to communicate the *Bertelson* questions. Our reply is that *Hagy* did not set out, solidified in amber, the ultimate boundaries for confessional stipulations. *Hagy* is not like a map by a medieval cartographer wherein whatever is included within a certain limit is safe but anything outside is where monsters lurk. To the contrary, we believe that *Hagy* presented one scenario wherein *Bertelson* is not triggered. Here, we discern another.

We have now had a little over a decade of experience with *Bertelson.* After surveying both military and Federal precedent, we believe our restatement squares with both the spirit and letter of the rule.

In the first place, our rationale credits the conventional wisdom of the accused and counsel. In the present case, for example, it is clear that counsel for AB Kepple was fully prepared to make the best of a difficult situation and argue from the undisputed facts that the accused was not a deserter. It no doubt would have surprised all present had the military judge cautioned the accused with a *Bertelson* probe; surely no one thought the accused was conceding guilt as to the crime of desertion. In this vein, we note that desertion versus "simple AWOL" is one of the classic situations in military law where the facts are undisputed and all that remains is a judicial determination of whether the charged offense is satisfied. Another case which springs to mind is larceny versus wrongful appropriation. In any event, we believe this to be the typical case where the same facts can lead to differing conclusions; either desertion or absence without leave could easily be found by a trier of fact on the instant stipulation of facts.

Second, as much as can be gained from civilian cases, our approach to confessional stipulations appears to comport with Federal practice. *See United States v. Wray* and *De La Maza v. United States, see also United States v. Robertson* and *United States v. Ferrenboeuf. See generally United States v. Stalder,* 696 F.2d 59, 61 (8th Cir.1982) and *Witherspoon v. United States,* 633 F.2d 1247 (6th Cir.1980).

Third, although the matter is not crystal-clear, our interpretation appears sanctioned by the Court of Military Appeals. *See* Chief Judge Everett's opinion in *United States v. Schaffer,* 12 M.J. at 427 n. 4.; one

can argue with some persuasiveness that the stipulation in this case would not have met with apparent approval unless it passed the test of "no confessional stipulations." *See also United States v. Reagan,* and *United States v. Brahm,* 16 M.J. 487 (C.M.A. 1983); *see generally United States v. Wilson,* 42 C.M.R. at 264–265. Also, we note that *Hagy* (which read *Bertelson* in a non-restrictive manner) was a case wherein a defense petition for review was denied.

Fourth, our rationale appears to honor the plain language of the Manual for Courts–Martial. Concededly, the non-binding Discussion of Rule 811 is capable of different nuances of interpretation. But we find persuasive the language which clarifies that a stipulation practically amounts to a confession when it establishes "every *element* of a charged offense *and* when the defense does not present evidence to contest any potential remaining issue on the merits." (emphasis added). The Discussion relates that a stipulation is not one which practically amounts to a confession "if the defense contests an issue going to guilt which is not foreclosed by the stipulation." We believe that to be the clear case here, with AB Kepple ardently contesting the matter of permanent intent to remain away, a matter clearly not foreclosed by his stipulation.

Finally, we believe our view of when a *Bertelson* inquiry is required of the military judge comports with our own precedents. *See United States v. Pollock,* 2 M.J. 373, 376 and n. 2 (A.F.C.M.R. 1977) and *United States v. Winton,* ACM 26744, 18 July 1988 (unpublished). *Winton* held that the *Bertelson* requirement applies only if the stipulation constitutes a *de facto* plea of guilty because the accused had stipulated to every criminal element charged. Since Airman Winton did not stipulate to willfully disobeying the order in question, the prosecution was obligated to prove the matter. *See also United States v. Gerber,* 15 M.J. 763, 764 (A.F.C.M.R. 1983) (*Bertelson* inquiry required if stipulation has "the same effect as a plea of guilty") and *United States v. Vincent,* 24 C.M.R. 506 (N.B. R. 1957) (excellent discussion of stipula-

tions with good research of Federal authorities).

### A Caveat

We do not wish to leave this subject without a caution to military judges. Prudence dictates conducting a *Bertelson* inquiry prior to accepting any factual stipulation into evidence which amounts to an admission of those inculpatory facts necessary for a conviction. *See United States v. Hagy,* 12 M.J. at 745 n. 10. A signal that should alert the military judge is when both prosecution and defense rest without presenting additional evidence. *See United States v. Corrigan,* 11 M.J. 734, 736 (A.F.C.M.R. 1981). We urge, as a minimum, that military judges query counsel whenever a stipulation appearing to be confessional is introduced in a contested case. Such initial inquiry should seek to determine whether the parties intend to enter a confessional stipulation; what elements, if any, remain in dispute; and whether either side anticipates presenting further evidence on the matter. If it becomes clear during the initial inquiry that there will be "no contest" remaining as to the offense in question yet a not guilty plea remains, the more detailed inquiry contemplated by *Bertelson* ought to be conducted. Nevertheless, we do not believe that the absence of such inquiry will always be fatal. Here, for example, we find no harm to the substantial rights of the accused.

### Absence From Which Base?

We turn to another legal matter, the question of whether the accused was charged properly. At trial, AB Kepple entered a conditional plea; the condition was his retention of the right to appeal the trial judge's ruling on a defense motion for dismissal. Such motion was based on the fact that the accused was ultimately charged with absence from F.E. Warren AFB, Wyoming. Citing *United States v. Walker,* 2 M.J. 253 (A.F.C.M.R. 1976), the accused argues that he was absent from Lackland AFB, Texas (the place from which he left) rather than F.E. Warren AFB, Wyoming (the place to which he had orders when he absented himself). *United States v.*

*Pounds*, 23 U.S.C.M.A. 153, 48 C.M.R. 769 (1974), resolves the issue against the accused. Moreover, the Manual for Courts–Martial, Part IV, para. 10(c)(7), expressly provides that a person undergoing transfer between activities is ordinarily considered attached to the activity to which ordered to report. *See* Analysis, Appendix 21, page A21–87, citing *Pounds*. *See* Air Force Regulation 35–73, *Desertion and Unauthorized Absence*, Table 2, Rule 4 and Paragraph 24a(1) (1 July 1987). In sum, the military judge ruled correctly in denying the motion for dismissal of the offense.

The findings of guilty and the sentence are

AFFIRMED.

Judge BLOMMERS concurs.

Senior Judge LEWIS (concurring/dissenting in part):

Senior Judge Kastl has provided a most comprehensive survey of the development of appellate law relating to confessional stipulations. However, the result moves us too far beyond the *Bertelson* rule. The fact remains that the stipulation entered into by the parties contained sufficient factual information to support a finding of guilty of desertion, albeit by the factfinder's inferring the requisite element of intent. This was surely not a difficult inference for a reasonable trier of fact to draw under the circumstances. The record in this case simply fails to inform us whether the appellant understood the implication of the stipulation. We may have a reasonable basis for drawing our own inference that he did. If we draw such an inference are we not effectively purporting to consign *Bertelson* to the dust bin of history, declaring it to be interesting but no longer pertinent to our present concerns? This is a bigger step than we ought to be attempting at the intermediate appellate level.

I would have been satisfied if the record had demonstrated substantial compliance with the procedure recommended in the "Caveat" portion of the majority opinion. *Cf. United States v. Enlow*, 26 M.J. 940 (A.C.M.R. 1988) (wherein the Army Court enunciates a much more strict adherence to

the *Bertelson* procedures). A relatively simple inquiry would have probably provided us with the information we needed to know to sustain the findings of guilty as adjudged. On the record before us, I would modify the findings of guilty to reflect absence without leave and reassess the sentence.